### HOUSER *et al. v.* COOPER, sheriff.

A contention by the claimant of a fund in court for distribution, that property subject to a lien held by him had been unlawfully appropriated to the satisfaction of an inferior lien, is not supported unless it affirmatively appears that the lien first referred to was in existence at the time when the alleged unlawful appropriation of the property was made.

Argued February 2, — Decided March 5, 1898.

Money rule. Before Judge Felton. Houston superior court. April term, 1897.

*W. C. Davis* and *W. Brunson Jr.,* for plaintiffs.
*R. N. Holtzclaw,* for defendant.

LITTLE, J. R. N. & B. C. Holtzclaw rented certain lands to Elisha Houser for the year 1895. During that year they furnished him with supplies with which to make the crop. At some time during the year Elisha Houser turned over to the Holtzclaws cotton sufficient to pay the rent and part of the account for supplies, or enough to pay for all the supplies and part of the rent. With the consent and approval of Elisha Houser, they applied the cotton or proceeds thereof, first to the payment of the account for supplies, and the balance was credited on the rent. The remainder of the rent not being paid, they, on December 10, 1895, levied a distress warrant upon certain products made that year on the rented premises by Elisha Houser. These products were sold under such levy; whereupon Willie Houser and others brought a rule against the sheriff, in whose hands were the proceeds of the sale, in which they contested with R. N. & B. C. Holtzclaw for priority in the distribution of that fund, the movants claiming under

executions against Elisha Houser issued on the foreclosure of laborers' liens upon the property sold, and the Holtzclaws claiming under the distress warrant issued and levied as set out above. The movants contended that while their liens as laborers were inferior to the lien for rent, they were entitled to the fund then in the hands of the officer, by reason of the fact that their liens were superior to the lien of the landlords for supplies, and that a sufficiency of the crops covered by the laborers' liens had previously been turned over to and appropriated by the landlords to have extinguished the lien for rent, but that instead of so applying them they had been applied to the account for supplies, the lien of which was inferior to that of the movants.

Under the provisions of paragraph 6 of section 2800 of the Civil Code, it is provided that the lien for supplies, etc., furnished by landlords, shall be inferior to the general and special liens of laborers. By section 2794 of the Civil Code, it is provided that "Liens of laborers shall arise upon the completion of their contract of labor, but shall not exist against bona fide purchasers without notice, until the same are reduced to execution and levied by an officer, and such liens in conflict with each other shall rank according to date, dating each from the completion of the contract of labor." Under this provision of the code the lien does not arise in favor of the laborer until the completion of his contract of labor. *Walls* v. *Rutherford*, 60 *Ga.* 439; *Brantley* v. *Raybon*, 61 *Ga.* 211; *Dexter* v. *Glover*, 62 *Ga.* 312; *McDonald* v. *Night*, 63 *Ga.* 161.

While laborers' liens yield to bona fide purchasers without notice before they are reduced to execution and levied, they take precedence of all other liens, save such as are specially excepted by the code. *Langston & Crane* v. *Anderson*, 69 *Ga.* 65. If it appeared that the laborers' liens of the movants in this case arose prior to and were in existence at the time when the landlords appropriated the crops turned over to them to the extinguishment of the lien for supplies, a very different question would be presented. Without undertaking to say how it should be decided, it seems clear that as the liens of the laborers could not arise until the completion of their contracts of labor, the onus was upon them to show that

at the time of the alleged misappropriation of the proceeds of the crops on the part of the landlords their contracts of labor had been completed and consequently that their liens had attached. If the crops were turned over to and appropriated by the landlords prior to the time of the completion of the laborers' contract of labor, the latter at the time of such appropriation had no lien capable of enforcement at law, and therefore could not complain. The onus being on the laborers, then, to show the existence of the lien, and having failed to submit any affirmative evidence tending to show that the lien was in existence at the time of the alleged unlawful appropriation of the property, it follows that the court, to whom the cause was submitted without the intervention of a jury, committed no error in holding that the landlords were entitled to the fund in controversy, under their lien for rent. Nothing is now ruled as to what might, or might not, be the equitable rights of a laborer whose inchoate lien had not by the completion of his contract become complete, in a case where it appeared that the products of his labor were about to be, or had been, fraudulently or unlawfully placed beyond the laborer's reach.

*Judgment affirmed. All the Justices concurring.*